**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| EUGENE BASCH, individually and on behalf of all others similarly situated, </br></br>Plaintiff,</br></br>v.</br></br>ENERNOC INC., KIRK ARNOLD, JAMES BAUM, DAVID BREWSTER, ARTHUR COVIELLO, TJ GLAUTHIER, GARY HAROIAN, TIMOTHY G. HEALY,</br></br>Defendants. | )</br>)</br>)</br>)</br>)</br>) C.A. No. 17-11305</br>)</br>) JURY TRIAL DEMANDED</br>)</br>)</br>)</br>)</br>)</br>) |

**CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS**

Plaintiff Eugene Basch ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff brings this class action on behalf of the public stockholders of EnerNOC Inc. ("EnerNOC" or the "Company") against the members of EnerNOC's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(d)(4), 15 U.S.C. § 78n(d)(4), of the Securities and Exchange Act of 1934 (the "Exchange Act"), U.S. Securities and Exchange Commission (the "SEC") Rule 14d-9 promulgated thereunder, 17 C.F.R. § 240. 14d-9, and 14(e) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78n(e), 78t(a). Specifically, Defendants solicit the tendering of stockholder shares in connection with the sale of the Company to Enel SpA, through a recommendation statement that omits material facts necessary to make the statements therein not false or misleading. Unless these disclosure deficiencies are cured, the Company's stockholders will be forced to decide

whether to tender their shares or not based upon a materially incomplete and misleading Recommendation Statement (defined below).

2. On June 22, 2017, EnerNOC issued a press release announcing that they had entered into an Agreement and Plan of Merger dated June 21, 2017 (the "Merger Agreement"), by which Enel SpA's subsidiary, Enel Green Power North America, Inc. ("Parent"), through Parent's wholly-owned subsidiary, Pine Merger Sub, Inc. ("Purchaser," and collectively with Enel SpA and Parent, "Enel") would commence a tender offer (the "Tender Offer") to acquire all of the outstanding shares of EnerNOC common stock for $7.67 per share in cash (the "Offer Consideration,"). The Tender Offer, commenced on July 10, 2017, is set to expire on August 4, 2017. The transaction between EnerNOC and Enel (the "Proposed Transaction") has an enterprise value of over $300M.

3. In connection with the commencement of the Tender Offer, on July 10, 2017, the Company filed a recommendation statement on a Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement is materially incomplete and misleading because, *inter alia*, it fails to disclose material information about the facts and circumstances that led up to the Proposed Transaction. Without all material information, EnerNOC stockholders cannot make a properly informed decision regarding whether to tender their shares. The failure to adequately disclose such material information constitutes a violation of §§ 14(d)(4), 14(e) and 20(a) of the Exchange Act as stockholders need such information in order to make a fully-informed decision regarding whether to tender their shares in connection with the Proposed Transaction.

4. For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the close of the Tender

Offer and grant or, in the event the Tender Offer closes without supplemental disclosures being made, recover damages resulting from the Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(d), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9.

6. The Court has Personal jurisdiction over each of the Defendants because each either conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (a) EnerNOC maintains its headquarters in this District; (b) the conduct at issue took place and had an effect in this District; (c) a substantial portion of the corporate transactions and wrongs complained of herein occurred here; and (d) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District.

## PARTIES AND RELEVANT NON-PARTIES

8. Plaintiff is, and has been at all relevant times, the owner of shares of ordinary stock of EnerNOC.

9. EnerNOC is a corporation organized and existing under the laws of the State of Delaware. It maintains principle executive offices at One Marina Park Drive, Boston, Massachusetts, 02210. EnerNOC's common stock trades on the New York Stock Exchange under the ticker symbol "ENOC."

10. Defendant Kirk Arnold ("Arnold") has served as a director of the Company since December 2014.

11. Defendant James Baum ("Baum") has served as a director of the Company since April 2013.

12. Defendant David Brewster ("Brewster") has served as President and a director of the Company since 2003.

13. Defendant Arthur Coviello ("Coviello") has served as a director of the Company since June 2008.

14. Defendant TJ Glauthier ("Glauthier") has served as a director of the Company since April 2007.

15. Defendant Gary Haroian ("Haroian") has served as a director of the Company since July 2015.

16. Defendant Timothy G. Healy ("Healy") has served as Chairman of the Board and Chief Executive Officer ("CEO") of the Company since June 2003.

17. Defendants Arnold, Baum, Brewster, Coviello, Glauthier, Haroian, and Healy are collectively referred to as "Individual Defendants" and/or the "Board."

18. Relevant non-party Purchaser is a corporation organized and existing under the laws of the State of Delaware.

19. Relevant non-party Parent is a corporation organized and existing under the laws of the state of Delaware and is a subsidiary of Enel Green Power SpA ("Enel Green").

20. Relevant non-party Enel Green is a corporation organized as a società per azioni under the laws of Italy. Enel Green is a subsidiary of Enel, which is also a corporation organized as a società per azioni under the laws of Italy.

**CLASS ACTION ALLEGATIONS**

21. Plaintiff brings this action individually and as a class action on behalf of all holders of EnerNOC common stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendants.

22. The action is properly maintainable as a class action under the Federal Rule of Civil Procedure 23.

23. The Class is so numerous that joinder of all members is impracticable. According to the Recommendation Statement, as of June 30, 2017, EnerNOC had 31,383,107 shares of common stock outstanding. While the exact number of Class members is presently unknown to Plaintiff and can only be ascertained through discovery, the Plaintiff believes that there are thousands of members in this Class. All members of the Class may be identified from records maintained by EnerNOC or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

24. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following: (i) whether Defendants recommended stockholders tender their

shares pursuant to the Proposed Transaction through a materially false or misleading Recommendation Statement in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if the securities laws violations are not remedied before the expiration of the Tender Offer; and (iii) whether the Class is entitled to injunctive relief as a result of Defendants' wrongful conduct.

25. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

26. Plaintiff will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in litigation of this nature.

27. The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

28. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

29. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

30. Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

**FURTHER SUBSTANTIVE ALLEGATIONS**

*Company Background*

31.  EnerNOC is a leading provider of energy intelligence software and demand response solutions to electric power grid operators, enterprises, and utilities.

32.  Enel is a manufacturer and distributor of electricity and gas that operates in approximately 30 countries and has over 60 million customers.

*The Sale Process*

33.  On September 20, 2016, the Board met and discussed options for strategic transactions as there had been a noticeable slowdown in their subscription-based software business and continued volatility in their demand response business.  Shortly thereafter, on September 23, 2016, the Board approved an approximate 15% reduction to their global workforce as part of a restructuring plan designed to refine their focus on select industry segments.

34.  Throughout October and November of 2016, Defendant Healy, William Sorenson ("Sorenson"), the Company's Chief Financial Officer, and Sean Leaver ("Leaver"), the Company's Vice President of Corporate Development, as well as select other senior management members met with several investment firms to gain additional understanding as to the current market for investment capital, and options for restructuring convertible debt.

35.  On November 30, 2016, the Board met with Sorenson and Michael Berdik ("Berdik"), the Company's General Counsel to discuss a potential sale or separation of parts of the Company's businesses.  In addition, Morgan Stanley & Co. LLC ("Morgan Stanley"), Greentech Capital Advisors Securities LLC ("Greentech Capital") and one other financial

advisor presented their services to the Board in efforts to be retained as a financial advisor to assist in reviewing and considering strategic alternatives.

36. From December 1, 2016 to June 20, 2017, the Company's senior management and Morgan Stanley, at the direction of the Board, had preliminary discussions with "approximately" 39 financial sponsors and 19 potential strategic acquirers, including Parent, regarding a sale of the entire company. EnerNOC entered into non-disclosure agreements, including standstill covenants, with 27 of these parties during this process, including Enel.

37. On December 2, 2016, the Board selected Morgan Stanley as their financial advisor for the strategic review process and instructed Defendant Healy to engage with Morgan Stanley.

38. On December 23, 2016, the Company and Morgan Stanley entered into an engagement letter under which Morgan Stanley would serve as EnerNOC's financial advisor for a potential sale of the Company.

39. On January 23, 2017, the EnerNOC and Greentech Capital entered into an engagement letter under which Greentech Capital would serve as the Company's financial advisor for the limited purpose of exploring a potential sale of the Company's subscription-based software and procurement businesses.

40. From January 23, 2017 through April 4, 2017, Company representatives and/or Greentech Capital had discussions with seven potential acquirers of segments of EnerNOC's business and four potential financial sponsors. The Company entered into non-disclosure agreements, including standstill covenants with nine of these parties.

41. On June 22, 2017, EnerNOC issued a press release announcing the agreement, reading in relevant part:

> EnerNOC, Inc. (Nasdaq:ENOC), a leading provider of demand response solutions and energy intelligence software, announced today that it has entered

into an agreement to be acquired by the Enel Group ("Enel"), a multinational power utility and leading integrated electricity and gas operator present in over 30 countries across five continents with a managed capacity of approximately 85 GW and more than 65 million business and household customers worldwide.

Under the terms of the agreement, the Enel Group, through its subsidiary Enel Green Power North America, Inc. ("EGPNA"), will purchase EnerNOC for $7.67 per share in an all-cash transaction valuing the Company at over $300M, including EnerNOC's net debt. EGPNA will commence a tender offer to acquire all of EnerNOC's shares of common stock for $7.67 per share, representing an approximate 42% premium to the Company's closing stock price on June 21, 2017 and a 38% premium to the 30-day volume-weighted average price. EGPNA's obligation to purchase the shares of EnerNOC's common stock tendered in the tender offer is subject to certain conditions, including that holders of a majority of the shares are tendered during the tender offer period and receipt of antitrust clearance in the United States. Following completion of the tender offer, the remaining shares will be acquired in a second step merger at the same cash price per share as paid in the tender offer.

"After a comprehensive review of strategic options, during which we evaluated a wide range of paths to maximize shareholder value, we are excited to enter into this agreement with the Enel Group. The transaction provides our stockholders with significant and immediate cash value, and unites us with one of the most innovative, global energy companies that shares our vision to change the way the world uses energy. In combining forces with the Enel Group, we look forward to accelerating the growth of our core businesses and to delivering ever more value to our customers as we lead the transition to a more sustainable, distributed energy future," said Tim Healy, Chairman and CEO of EnerNOC.

This transaction has been unanimously approved by the Board of Directors of EnerNOC. The closing of the transaction is subject to the satisfaction of customary conditions and is expected to close in the third quarter of 2017.

Morgan Stanley and Greentech Capital Advisors are serving as financial advisors and Cooley LLP is acting as legal counsel.

***The Recommendation Statement Misleads EnerNOC Stockholders by Omitting Material Information***

42. On May 31, 2017, EnerNOC filed a materially misleading Recommendation Statement with the SEC which was designed to convince stockholders to tender their shares to Parent. The Recommendation Statement is rendered misleading by the omission of critical

information concerning the process that led up to the execution of the Merger Agreement, including the solicitation and offer review process, Morgan Stanley's financial analysis conducted in reaching its fairness opinion, Morgan Stanley's potential conflicts of interest, and information regarding potential conflicts of interest faced by EnerNOC senior management when leading the search for strategic alternatives that ultimately resulted in the execution of the Merger Agreement. As such, the Recommendation Statement, which recommends that the Company's stockholders tender their shares in the Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act.

*Misleading Statements and Omissions Regarding the Sale Process*

43. The Recommendation Statement contains material misstatements and omissions regarding the solicitation and negotiation process taking place in the lead up to the Purchase Agreement. For example, the Recommendation Statement indicates that both Party C and Party J continued into "Phase II" of the bid process, as their bids were significantly higher than multiple bidders; however, information as to their actual bid prices is noticeably absent from the Recommendation Statement.

44. This information is particularly material, as stockholders would be unable to determine whether there were and may still be other potential acquirers that would be willing to provide greater consideration than that offered by the Tender Offer.

*Standstill Provisions*

45. The Recommendation Statement discloses that EnerNOC entered into several non-disclosure agreements with potential acquirers during its search for strategic partners. For example, the Recommendation Statement expressly states that the Company entered into "non-disclosure agreements . . . including customary standstill covenants," with 27 parties regarding

a potential sale of the entire company and with nine parties regarding a potential sale of part of the company. However, the Recommendation Statement is silent as to whether any of these so-called "customary standstill" provisions are currently operating to prohibit the counterparties from making a superior offer or topping bid for the Company, or if they contained don't-ask-don't-waive provisions or other terms that contractually prohibit the counterparties from seeking a waiver of any standstill provision terms.

### *Potential Conflicts Facing Company Management and Directors*

46. The Recommendation Statement contains material misrepresentations and omissions regarding employment negotiations taking place in the lead up to the Purchase Agreement.

47. The Recommendation Statement states that for a period of one (1) year following the closing of the Merger Agreement, Parent or its affiliates will continue to provide benefits by way of employment or severance packages to employees who were employed by EnerNOC as of April 30, 2017. However, the Recommendation Statement is silent as to when and how these terms were negotiated. Further, the Recommendation Statement is deficient with respect to disclosure of any negotiations with senior management that likely occurred with respect to continued employment. On this topic, the Recommendation Statement simply states, "[s]uch arrangements have not, to our knowledge, been discussed as of the date of this Schedule 14D-9 . . . ."

48. Contrary to the disclosure in the Recommendation Statement, the continuing employment of EnerNOC management after the close of the Proposed Transaction appears to be a foregone conclusion. In the press release announcing the Proposed Transaction, Defendant Healy, EnerNOC's CEO, stated: "In combining forces with Enel Group, we look forward to

accelerating the growth of our core businesses . . . ."

49. Despite this public statement by Defendant Healy, the Recommendation Statement is fails to disclose any communications that took place between Enel and EnerNOC concerning future roles for the Company's management.

50. This information is particularly material with respect to Defendant Healy, as he was instrumentally involved in the negotiations with Enel throughout the sale process. Any communications – even one-sided written indications in proposals or other written communications -- concerning post-merger employment between Enel or its affiliates and Defendant Healy, or any other EnerNOC officers, directors, or employees, during the sales process, would be material to a stockholder's decision as to whether to tender their shares. Such communications give rise to substantial undisclosed conflicts of interests.

51. Thus, the Recommendation Statement materially misleads EnerNOC stockholders by omitting material facts concerning the timing and nature of communications between Enel and the Board or any EnerNOC senior management regarding post-transaction retention of EnerNOC's management and/or directors. EnerNOC stockholders are currently led to believe that the sales process was free from such conflicts of interest, and that no negotiations regarding management retention occurred.

52. Statements that "[s]uch arrangements have not, to our knowledge" been discussed are rendered materially misleading by the omission of material facts regarding the timing and nature of employment communications.

*Morgan Stanley's Financial Analysis*

53. The Recommendation Statement describes Morgan Stanley's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description

of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, EnerNOC's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether or not to tender their shares. This omitted information, if disclosed, would significantly alter the total mix of information available to EnerNOC's stockholders.

54. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) EnerNOC's unlevered free cash flows as calculated by Morgan Stanley for the Company, all required line item metrics to calculate them, as well as a reconciliation to a corresponding GAAP metric, such as Net Income; (ii) the inputs used and assumptions made in deriving the range of discount rates of 10.8% to 12.8%; and (iii) Morgan Stanley's basis for using perpetual growth rates of 2% to 3%.

55. With respect to Morgan Stanley's *Other Information* section, the Recommendation Statement indicates that Morgan Stanley "observed additional factors . . . which were noted as reference data or presented solely for illustrative purposes [to the Board], including the following. . . ." The Recommendation Statement continues to describe various "factors" observed and reported to the Board. The term "including the following" is unnecessarily vague and misleading, especially considering the fact that the Recommendation Statement is silent as to whether the "factors" listed are a full and accurate representation of the information Morgan Stanley presented to the Board. The omission of such key information, which the Board necessarily considered in determining its course of action throughout the process leading up to the Merger Agreement, renders these statements materially misleading.

56. With respect to potential conflicts of interest faced by Morgan Stanley, the

Recommendation Statement states that "Morgan Stanley has been engaged with regard to two financial advisory assignments" for Enel, unrelated to the Proposed Transaction, which would in aggregate have fees "materially less" than the aggregate of fees Morgan Stanley received from Enel in the two years preceding the Proposed Transaction ($7.0M).  Such language is unnecessarily vague, and the omission of the actual dollar figures renders this statement materially incomplete and misleading.  This is especially true, considering that Morgan Stanley's potential receipt of additional fees from Enel on other transactions may have improperly influenced the rendering of its fairness opinion with respect to the Proposed Transaction.  In other words, such information would be material to stockholders when determining how much credibility, if any, Morgan Stanley's fairness opinion should be afforded.

57.     Defendants' failure to provide EnerNOC's stockholders with the foregoing material information renders the analyses depicted in the Recommendation Statement materially incomplete and misleading, and constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information, and yet omitted at least recklessly or negligently.  The material information described above that was omitted from the Recommendation Statement takes on actual significance in the minds of EnerNOC's stockholders in reaching their decision whether to tender their shares in favor of the Proposed Transaction.  Absent disclosure of this material information prior to expiration of the Tender Officer, Plaintiff and the other members of the Class will be unable to make an informed decision about whether to tender their shares, and are thus threatened with irreparable harm for which damages are not an adequate remedy.

58.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## **CLAIMS FOR RELIEF**

### **COUNT I**

### **Claims Against All Defendants for Violations of § 14(e) of the Securities Exchange Act of 1934**

59. Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

60. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. § 78n(e).

61. As discussed above, EnerNOC filed and delivered the Recommendation Statement to its stockholders, which defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

62. Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the tender offer commenced in conjunction with the Proposed Transaction. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

63. The Recommendation Statement was prepared, reviewed and/or disseminated by defendants. It misrepresented and/or omitted material facts, including material information about the intrinsic value of the Company and potential conflicts of interest faced by certain Individual Defendants.

64. In so doing, defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

65. The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

66. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

67. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II

### Claims Against All Defendants for Violations of § 14(d)(4) of the Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)

68. Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

69. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

70. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

71. The Recommendation Statement violates § 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Recommendation Statement false and/or misleading.

72. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

73. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT III

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

74. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

75. The Individual Defendants acted as controlling persons of EnerNOC within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of EnerNOC and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

76. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

77. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Recommendation Statement.

78. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

79.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(B)     declaring that the Recommendation Statement is materially false or misleading;

(C)     enjoining, preliminarily and permanently, the Proposed Transaction;

(D)     in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)     directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(F)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)     granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  July 14, 2017 Respectfully submitted,

By: */s/* Mitchell J. Matorin
Mitchell J. Matorin (BBO# 649304)
MATORIN LAW OFFICE, LLC
18 Grove Street, Suite 5
Wellesley, MA 02482
(781) 453-0100
mmatorin@matorinlaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**LEVI & KORSINSKY, LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567